Garvin, Appellant, *v.* Reardon Bros., Incorporated.

Argued December 13, 1928.

352

*J. Maurice Gray,* for appellant.—There was sufficient evidence of the contract: Beymer v. Bonsall, 79 Pa. 298. Plaintiff performed his contract: Middleton v. Thompson et al., 163 Pa. 112; Schreibstein v. Cohen, 89 Pa. Superior Ct. 252.

*William Linton,* for appellee.—There was insufficient evidence of the contract: Beeson v. Lang, 85 Pa. 197; Roberts v. Austin, 5 Wharton 312; U. S. National Bank of Portland v. Union National Bank of Philadelphia, 268 Pa. 147.

Opinion by Trexler, J., January 25, 1929:

This is a suit by a real estate broker for commissions for securing a mortgage loan. The jury found for the plaintiff and the court entered judgment for the defendant n. o. v. The account of the inception of the negotiations is substantially as follows: Mr. Reardon, the president of the defendant company, a corporation engaged in real estate brokerage, came to the plaintiff and asked him whether he could secure

for him a first mortgage for $15,000 on a certain mill property, 3419 Melvale Street. The plaintiff replied that he had no direct channels for any contact because his transactions in this respect were with home buyers. The defendant stressed the point very much that he was anxious to secure a loan as it was for a client of his whom plaintiff did not know. The plaintiff states, "I told him I knew a Mr. MacFarland, a broker in town, to whom I could apply for the mortgage and I felt that he could place it. Several days later, I telephoned Mr. Reardon and told him that Mr. MacFarland said he could secure the mortgage." Thus far we may concede for the sake of argument that Mr. Reardon's company was liable if the loan was effected, for we may infer from the fact that the verdict was in favor of the plaintiff that the defendant had not disclosed its principal.

The next actor on the scene is Mr. MacFarland, to whom Mr. Garvin, the plaintiff, transferred the task of securing the loan. His action has an important bearing on the matter. He was unwilling to do anything until he knew for whom he was working. The plaintiff testified that he, by telephone, "told Mr. Reardon that Mr. MacFarland would not secure the mortgage until he had a letter of authorization signed by Mr. Reardon or Mr. Reardon's client that he, Mr. MacFarland, would be paid a fee of $1,500 for securing the loan." To meet this demand, Mr. Grow, the owner of the property, addressed a letter to Mr. Reardon which reads as follows: "Relative to first mortgage of $15,000 which you agree to secure on my property, 3419 Melvale Street, wish to advise that I hereby authorize you to secure this mortgage for me at 10% fee, confirming telephone conversation." This letter was received by Mr. Garvin who in turn delivered it to Mr. MacFarland. Before this letter was passed, the matter was still open. Mr. MacFarland had no claim, for he had not accepted the task to

secure the loan. He would not close the transaction until he knew for whom he was working. This was a new deal, a new contract, and the principal for whom the Reardon Co. was acting was disclosed and neither Mr. MacFarland to whom Mr. Garvin had committed the matter, nor Mr. Garvin himself could recover commissions from the Reardon Co. The latter dropped out. Its interest thereafter merely consisted in a small share of the commissions. The plaintiff, as stated, cannot rely upon the first contract with Mr. Reardon, for his agent or his substitute, Mr. MacFarland, had declined to proceed under that. It is sufficient to relieve the agent from liability "if the disclosure of the fact of the agency and the identity of the principal is made before liabilities are incurred on either side." 2 C. J. 819.

We might pass the consideration of the other question involved, for Mr. Reardon or his company not being liable, it matters not what happened between Mr. Grow and Mr. Garvin and his agent, Mr. MacFarland. We may, however, note that when the date of settlement came, the loan fell through because the company who was to supply the money would not take the mortgage until a boiler was put in the building. The borrower had contracted for a loan without condition. He had a right to refuse to close the matter by refusing to accept the condition. He may have given, as plaintiff avers, another reason for not taking the mortgage, nevertheless the plaintiff in order to earn his commission had to complete the task according to the contract of the parties and that called for a mortgage without any provisos. Instead of getting $15,000, the borrower would necessarily have received that amount less the costs of installing the boiler. This was not his contract. Of course, if the prospective borrower was not required to take the mortgage, but had the right to refuse it, no one was entitled to commissions.

The judgment is affirmed.